UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VICTORIA DOMENICHETTI, | * |
| Plaintiff, | * |
| v. | * |
| | * Civil Action No. 12-cv-11311-IT |
| PREMIER EDUCATION GROUP, LP | * |
| d/b/a/ THE SALTER SCHOOL, LLC, | * |
| and DAVID PALMER, | * |
| Defendants. | * |

MEMORANDUM AND ORDER

January 5, 2015

TALWANI, D.J.

I.  Introduction

Plaintiff Victoria Domenichetti brings this action against her former employer, Premier Education Group ("Premier"), and its former Fall River Campus President, David Palmer. Premier reduced Domenichetti's full-time employment to part-time shortly before she began her pregnancy leave, and Domenichetti asserts claims of interference and retaliation under the Family Medical Leave Act ("FMLA" or the "Act"), pregnancy discrimination, and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Presently before the court is Defendants' Motion for Summary Judgment as to All Claims [#72]. For the reasons set forth below, the motion is ALLOWED IN PART and DENIED IN PART.

II. Summary Judgment Standard

The moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A genuine factual dispute exists if the issue can be resolved in favor of either party. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). Facts are material if they have the potential to affect the outcome of the case. Id.

The nonmoving party must identify facts, either uncontested or disputed, that demonstrate the existence of a trialworthy issue, id., and may not rest on the pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his or her favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The nonmoving party may not rely "'merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" Pina v. Children's Place, 740 F.3d 785, 795 (1st Cir. 2014) (quoting Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 855–56 (1st Cir. 2008)).

III.    Factual Background

Viewing the evidence in the light most favorable to Domenichetti and drawing all reasonable inferences in her favor, the factual background is as follows:

Defendant Premier owns and operates the Salter School, a career-training school with various campuses, including in Fall River, Massachusetts. In January 2011, Plaintiff Domenichetti was hired as the Externship Coordinator at the Fall River campus, where she was responsible for the placement of students in externship opportunities. She had been working for about a year, when she became pregnant.

Several months later, with the school facing declining enrollment, William Anjos, then Premier's Senior Vice President of Operations and Chief Financial Officer, directed Paul Ferrise, a Regional Vice President, to develop a plan to reduce staff expenses for the campuses in his region. On May 16, 2012, at a time when Anjos and Ferrise claim to have no knowledge of

2

Domenichetti's pregnancy, Ferrise recommended various reductions in force, including eliminating or reducing to half-time the Externship Coordinator position in Fall River.

In the meantime, various staffing changes took place on the Fall River campus. First, the Director of Career Services vacated her position. Domenichetti spoke with David Caldwell, then the Fall River Campus President, about the Director position. Domenichetti expressed some interest in the position but informed Caldwell that she was uninterested in taking the position because it would be fairer to the students for her to consider the position after she returned from maternity leave.

Second, in February 2012, Erin Groves was hired as a Career Services Coordinator. Groves had applied for the Director of Career Services position. She had no prior career services experience, but was informed by Caldwell that if her performance met expectations during her introductory period as a Career Services Coordinator, she would be considered for promotion to the Director position. Domenichetti assisted in training Groves.

Third, Caldwell resigned his position and was replaced in late April or early May of 2012 by David Palmer. Palmer could see that Domenichetti was pregnant when he began his employment.

Fourth, on May 30, 2012, Palmer recommended to Anjos that Groves be promoted to Director of Career Services.

Also in May 2012, Domenichetti requested FMLA forms from Premier's Human Resources director, Jennifer Brown. On June 1, 2012, Brown forwarded the forms to Domenichetti.

On June 5, 2012, Ferrise left on vacation. While Ferrise was away and on or before June 11, Anjos approved Groves' promotion to Director of Career Services. When Domenichetti

learned that Groves had been promoted, she confronted Palmer and told him that she was angry about his decision because she felt that she was more qualified for the promotion than Groves.

At some point prior to June 13, 2012, Palmer sought Anjos' approval for Domenichetti's termination for alleged performance issues. In response, Anjos suggested eliminating her position and hiring a part-time replacement.

On June 13, 2012, Domenichetti submitted her maternity leave papers to Brown. Later that day, Brown sent Anjos an e-mail regarding a conversation she had with Palmer. Brown stated that Palmer had told her that he had spoken with Anjos regarding Domenichetti's performance and that Anjos had suggested eliminating her position and hiring a part-time replacement. Brown informed Anjos that Domenichetti's termination was scheduled to occur in two days on June 15. Brown further informed Anjos that Domenichetti had just submitted her leave papers and that she was scheduled to give birth on August 9. Brown asked Anjos whether they should proceed with the plan relayed by Palmer. Anjos responded a few minutes later, and copied David Palmer: "Yes, but given the circumstance we should offer her the part-time position. It protects us."

On June 15, Palmer informed Domenichetti that she was being transitioned to a part-time position.

At some point between the beginning of June and June 19, Domenichetti met with Michael Tinberg, Premier's Regional Director of Career Services. Domenichetti complained to Tinberg about several incidents involving Palmer.[1] Domenichetti complained to Tinberg that Palmer had stared at Groves' breasts throughout a meeting and that Palmer had used the word "girls" to refer to women at the Fall River campus. Domenichetti identifies a number of other

---

[1] There is a dispute about the exact date that Domenichetti met with Tinberg. For reasons discussed below, the date of the meeting is immaterial.

4

incidents, about which she may or may not have also complained to Tinberg,[2] including: (1) Palmer took no action against a male employee who referred to Domenichetti as a "bitch" in front of Palmer; (2) Palmer took no action against the same employee who was also having sexual relationships with several of his subordinates; (3) Palmer used his work computer to shop on the Victoria's Secret website, which was visible to employees passing by in the hall; and (4) at a Premier ice cream social, Palmer told a lewd joke in which he referred to his penis. Regardless of when the conversation between Domenichetti and Tinberg occurred and what was said, Tinberg did not report the conversation to Ferrise until June 20 or 21 after Ferrise returned from a vacation.

At the end of June 2012, Domenichetti lost her health benefits through Premier as a result of her part-time status. On July 18, 2012, Domenichetti filed this action. In early August 2012, Domenichetti began her maternity leave. On November 5, 2012, Domenichetti returned from maternity leave and resigned from her position.

IV.  Analysis

    A.  Plaintiff's Title VII Claims

        1.  Overview of Plaintiff's Title VII Claims

In Count III, entitled "Pregnancy Discrimination," Domenichetti alleges that Defendants discriminated against her because she was pregnant, without identifying the federal or state source of law for the claim. In Count IV, entitled "Title VII – Sex Discrimination," Demenichetti incorporates the rest of the complaint's allegations by reference. Domenichetti's opposition to the motion to dismiss makes no reference to any state law claims and refers to her claims as "Title VII pregnancy discrimination claims." Opp'n Defs.' Mot. Summ. J. 14 [#88].

---

[2] It is ultimately irrelevant whether these additional incidents were part of the complaint Domenichetti made to Tinberg.

5

Title VII prohibits discrimination because of, or on the basis of, sex. 42 U.S.C. § 2000e-2. "Because of sex" or "on the basis of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000(k). Because pregnancy discrimination is a form of gender discrimination under Title VII and because Domenichetti does not distinguish between Counts III and IV or otherwise argue that she was discriminated against based on her gender more generally, the court treats Counts III and IV as a single claim for pregnancy discrimination under Title VII.

In Count V, Plaintiff has alleged a claim for retaliation under Title VII based on Domenichetti's complaint and report of Defendant Palmer's sexual harassment of Domenichetti and others.

### 2. Plaintiff's Title VII Discrimination Claims Against Defendant Premier

On a motion for summary judgment in Title VII discrimination cases where there is no direct evidence of discriminatory intent, courts analyze the issue of an employer's motive or intent through the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Here, Domenichetti argues that McDonnell Douglas is inapplicable because she has presented direct evidence of discrimination. Domenichetti identifies a single piece of alleged direct evidence: in an e-mail exchange concerning the reductions in force, Ferrise informed Anjos that a person Ferrise had recommended for reduced hours, Sheyda Rodriguez, was pregnant and was set to take maternity leave in a few weeks, and upon receiving this information, Anjos responded that it was probably better for Rodriguez to be laid off. Regardless of whether this series of events would constitute direct evidence of discriminatory intent in a case brought by Rodriguez, it constitutes only circumstantial evidence in Domenichetti's case. The court therefore analyzes Domenichetti's Title VII claims pursuant to

McDonnell Douglas.

That framework consists of a three-step inquiry. See Smith v. Stratus Computer, Inc., 40 F.3d 11, 15–16 (1st Cir. 1994). The plaintiff begins with the relatively light burden of establishing, by a preponderance of the evidence, a prima facie case of discrimination. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). To establish a prima facie case for pregnancy discrimination, a plaintiff must show that: "(1) she was pregnant at the relevant time, (2) her job performance was satisfactory, but (3) her employer took some adverse employment action against her while (4) treating non-pregnant employees differently." Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 475 (1st Cir. 2002).

If the plaintiff establishes a prima facie case, the court presumes that discrimination occurred and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action. Here, the employer has "the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–07 (1993) (quoting Burdine, 450 U.S. at 254). "[T]he defendant must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Id. (quoting Burdine, 450 U.S. at 254–255, and n. 8).

If the employer does so, the presumption of discrimination disappears and the plaintiff has the ultimate burden to submit evidence sufficient for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus.

Premier argues that Domenichetti "cannot establish her prima facie burden," Mem. Supp. Defs.' Mot. Summ. J. All Claims 11 [#73], but does not identify which, if any, of the four

7

elements she has failed to establish. It is undisputed that Domenichetti was pregnant when her hours were reduced to part-time resulting in a loss of health benefits. "An adverse employment action 'typically involves discrete changes in the terms of employment'" including "'a decision causing significant change in benefits.'" See Morales–Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). Domenichetti's most recent performance evaluation was positive and although Brown reported that Palmer had told her that he had spoken with Anjos regarding Domenichetti's performance, Defendants do not claim that Domenichetti's job performance was the reason for the adverse action. Finally, Domenichetti was treated differently than non-pregnant employees as there were non-pregnant employees whose positions were not selected for a reduction in hours during Premier's downsizing.

For the second step of McDonnell Douglas, Premier has articulated a presumptively legitimate reason for decreasing Domenichetti's hours, namely its need to downsize due to the decreasing student population.

Accordingly, the court proceeds to consider whether Domenichetti has submitted sufficient evidence that a reasonable factfinder could infer that the downsizing justification is pretext and that the real reason for her demotion is discriminatory. One way to establish pretext is to show "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons.'" Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000) (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 158 (1st Cir. 1998)). The final analysis ultimately reduces to whether "'there is a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination.'" Ahmed v. Johnson, 752 F.3d 490, 497 (1st Cir. 2014) (quoting Holland v. Gee, 677 F.3d 1047, 1056

8

(11th Cir. 2012)).

Premier argues that Domenichetti cannot offer any evidence that its nondiscriminatory justification is pretext because there is no evidence that Anjos knew that she was pregnant when he made his decision to reduce the Fall River Externship Coordinator position to part-time status. In short, Anjos was the president of a 1300-to-1400-employee company who did not work in the same office as Domenichetti. There is no evidence that Anjos had any contact with Domenichetti or from which one can conclude that Anjos was aware that she was pregnant. Nor can Brown's knowledge of Domenichetti's pregnancy be imputed to Anjos merely because Anjos's office was located near Brown's office.

Premier's argument, however, places too much emphasis on the actions of Anjos and the May 16 to 18 e-mail exchange with Ferrise, and fails to sufficiently account for the role that Palmer may have played.

Most importantly, the May 16 to 18 e-mail exchange does not document a final decision to make the Externship Coordinator position part-time. Instead, Ferrise asserted that these are "some initial thoughts on staffing adjustments," that the student population did not warrant having two full-time employees in the Career Services Department, and that although a career services position could be eliminated or made part-time, the approach would require careful thought and planning due to the need to maintain externship placement rates. Anjos responded with a directive as to certain financial aid positions, but only an inquiry, and not a directive, as to the Externship Coordinator position. Ferrise responded that student externships were set to <u>begin</u> in early June, and that positions could be eliminated after that. The record does not reveal Anjos' approval of this proposed course of action prior to his conversation with Palmer in June, any more details as to the "careful thought and planning" for such position reductions, or any

9

further information on the amount of time after the semester began for the externship placements to be completed before layoffs could take place. Indeed, there is nothing in the record to suggest that a final decision on eliminating the Externship Coordinator position had been made by the time that Ferrise left on vacation on June 5, 2012. Instead, in the absence of such evidence, a reasonable inference can be drawn that as of June 5, 2012, no final decision had been made as to the elimination of the Externship Coordinator position on the Fall River campus.

The reliance on the purported decision of May 18 also fails to take into account the changes in staffing in the Fall River career services office. At the time of Ferrise's May 16 recommendation, Groves and Domenichetti held the two non-director career services positions. In June, Palmer obtained Anjos' approval for Groves' promotion to the Director of Career Services position. The non-director career services positions were thus reduced from two to one, thereby satisfying the proposed reduction in force without any further layoffs.

Finally, the catalyst for the timing of reduction of hours for Domenichetti's position appears to have been Palmer's June conversation with Anjos about Domenichetti's performance, a conversation he appears to have had only after she expressed to Palmer her displeasure about Groves' promotion. Indeed, the implementation of the reduction in hours while Ferrise was away and without the careful planning urged by Ferrise suggests that it was not triggered by Ferrise's proposal, but by Palmer's complaint.

It is undisputed that Palmer knew Domenichetti was pregnant from the very first week he began working at the Fall River campus and that his request to Anjos to terminate her came shortly before she was due to go out on pregnancy leave. A plaintiff may succeed on a discrimination claim based on the animus not of the ultimate decisionmaker, but rather on the animus of a subordinate employee who *influenced* the decisionmaker. See Staub v. Proctor

Hosp., 562 U.S. 411 (2011) (considering circumstances under which liability for employment discrimination attaches based on the animus of an employee who influences the ultimate decisionmaker); Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 85–88 (1st Cir. 2004) (discussing imputation of discriminatory animus of subordinate to decisionmaker).

Although this court does not sit as a "super personnel department[]" to evaluate whether a nondiscriminatory decision was a wise one, see Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991), the record here calls into question the veracity of the reasons offered by Premier. The proposed layoff could well have been a convenient pretext to use when Palmer approached Anjos about Domenichetti. On this record, the question of intent must be resolved by a jury.

### 3. Retaliation Claim Against Premier

Domenichetti also claims that Premier retaliated against her for reporting sexual harassment. In order to make out a prima facie case of retaliation, a plaintiff must prove: "(1) [sh]e engaged in protected conduct under Title VII; (2) [s]he suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity." Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998). The employee having engaged in protected conduct must be a but-for cause of the adverse action. See Univ. of Tex. S.W. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013). Protected activity includes "opposing" any practice unlawful under Title VII or making a charge in any investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a). A plaintiff must show that the decisionmaker knew of the protected activity. See Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir 2013).

Here, Domenichetti's complaint to Tinberg about Palmer's conduct constituted protected activity under Title VII. There is a dispute of fact as to whether Domenichetti made her complaint to Tinberg during the first week of June or later in the month. Even assuming that the

11

complaint was made in early June, Domenichetti is unable to demonstrate a causal connection between the complaint and the reduction in her hours. Palmer recommended to Anjos that Groves be promoted on May 30 and Anjos approved that promotion on or before June 11. Although the record is unclear about the exact date that Anjos decided to adopt the recommendation to make the Externship Coordinator position part-time, it is undisputed that the decision was finalized by June 13 and communicated to Domenichetti on June 15. It is similarly undisputed that Tinberg did not report the complaint to Ferrise until June 20 or 21 when Ferrise returned from vacation. There is no evidence that Anjos or Palmer was ever told about the complaint during the relevant time period. Accordingly, Domenichetti's Title VII retaliation claim fails because she is unable to demonstrate that any of the relevant decisionmakers knew about her protected conduct when they took the adverse employment actions.

    4. <u>Plaintiff's Title VII Claims Against Defendant Palmer</u>

Defendants move for summary judgment as to the Title VII claims against Defendant Palmer on the ground that Title VII does not create individual liability. Domenichetti failed to respond to that argument in her opposition to the motion for summary judgment. Because "there is no individual employee liability under Title VII," <u>Fantini v. Salem State Coll.</u>, 557 F.3d 22, 31 (1st Cir. 2009), Palmer is entitled to summary judgment as to Counts III, IV, and V.

  B. <u>FMLA Claims</u>

    1. <u>Background on FMLA</u>

The purposes of the FMLA are to assist employees in balancing workplace and family responsibilities and to guarantee employees reasonable medical leave. <u>Hodgens</u>, 144 F.3d at 159. The statute contains "two types of provisions: 'those creating substantive employee rights and those providing protection for the exercise of those rights.'" <u>Carrero-Ojeda v. Autoridad de</u>

Energia Electrica, 755 F.3d 711, 718 (1st Cir. 2014) (quoting Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005)).

The FMLA's provisions creating substantive rights "'set[s] substantive floors' for conduct by employers, and creat[es] 'entitlements for employees.'" Colburn, 429 F.3d at 330 (quoting Hodgens v. General Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998). Provisions codified at 29 U.S.C. § 2612 guarantee employees twelve weeks of leave during any twelve-month period for various reasons, including caring for a newborn child. 29 U.S.C. § 2612(a)(1)(A). The FMLA further entitles an employee returning from leave to be restored to the same position he or she held when the leave commenced or to an otherwise equivalent position. Id. § 2614(a)(1). Employees taking leave are also entitled to maintenance of their coverage under a group health plan at the level at which coverage would have been maintained had the employee not taken leave. Id. § 2614(c)(1). The FMLA and its accompanying regulations protect employees' exercise of their substantive rights by, inter alia, making it unlawful for an employer to "interfere with, restrain, or deny the exercise" of any substantive right . . . ." 29 U.S.C. § 2615(a)(1).

FMLA provisions providing protection for employees' exercise of their rights generally arise when an employee takes or attempts to take leave and alleges that he or she was subsequently punished for having done so. See, e.g., Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1 (1st Cir. 2012); Colburn, 429 F.3d at 335 ("The crux of Colburn's complaint is that Nichols terminated him not because of any inappropriate behavior on his part, but in retaliation for his having taken protected medical leave."); Hodgens, 144 F.3d at 156–58.

The Department of Labor regulations address both categories of claims:

(b) Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act. . . . Interfering with the

13

exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA, for example:

>(1) Transferring employees from one worksite to another for the purpose of reducing worksites, or to keep worksites, below the 50-employee threshold for employee eligibility under the Act;
>
>(2) Changing the essential functions of the job in order to preclude the taking of leave;
>
>(3) Reducing hours available to work in order to avoid employee eligibility.

(c) The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights.

29 C.F.R. §§ 825.220(b), (c) (emphasis added).[3] The line between interference and discrimination is not always a bright one. See Colburn, 429 F.3d at 330 ("[T]here is no clear demarcation in § 2615 between what is 'interference' and what is 'discrimination,' and the terms overlap in some situations."). The First Circuit has concluded that "interference" may cover both retaliation claims and non-retaliation claims, but that "whether a claim is characterized as 'interference' or not, its elements actually differ depending on whether the plaintiff is, at bottom, claiming that the employer denied his or her substantive rights under the FMLA or that the employer retaliated against him or her for having exercised or attempted to exercise those rights.'" Mellen v. Trustees of Bos. Univ., 504 F.3d 21, 26–27 (1st Cir. 2007) (quoting Colburn, 429 F.3d at 332).

---

[3] Congress authorized the Department of Labor to promulgate regulations implementing the FMLA. 29 U.S.C. § 2654. Accordingly, the department's reasonable interpretations of the statute are entitled to deference pursuant to Chevron USA, Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843–44 (1984). Dressler v. Cmty. Serv. Commc'ns, Inc., 275 F. Supp. 2d 17, 26 (D. Me. 2003), aff'd, 115 F. App'x 452 (1st Cir. 2004).

14

If the claim is that the employer denied substantive rights under the FMLA, an "employer's subjective intent is not relevant" to FMLA interference claims. Hodgens, 144 F.3d at 159; see also Colburn, 429 F.3d at 331 ("[N]o showing as to employer intent is required."). Instead, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." Hodgens, 144 F.3d at 159. "To meet his or her burden in an interference with substantive rights claim, a plaintiff need only show, by a preponderance of the evidence, entitlement to the disputed leave . . . ." Colburn, 429 F.3d at 331.

If the claim is of retaliation, an employer's intent matters. Id. at 160. The First Circuit has concluded that this motive issue is analogous to that raised in other cases involving discrimination, and has concluded that the McDonnell Douglas burden-shifting framework applies to claims that an employee was discriminated against for availing himself of FMLA-protected rights. Id. The plaintiff may establish a prima facie case by presenting evidence that (1) she took advantage (or sought to take advantage) of a right provided to her by the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the exercise of the plaintiff's FMLA rights and the adverse action. Carrero-Ojeda, 755 F.3d at 719. As with the pregnancy discrimination claim, the employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse action]." Id. If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected FMLA leave. Id.

## 2. Domenichetti's FMLA Claims

Here, Domenichetti's claims include both a pure retaliation claim (that defendants failed to promote her because she was seeking pregnancy leave) and a mixed claim, that defendants selected her position for a reduction in hours because she was seeking pregnancy leave (a retaliation claim) and also that Premier thereby avoided maintaining her health benefits during her leave and reinstating her to a full-time position upon her return (an interference claim).[4]

The failure to promote claim is easily dispensed with. Although a plaintiff's prima facie burden is "'quite easy to meet,'" Hodgens, 144 F.3d at 165 (quoting Villanueva v. Wellesley Coll., 930 F.2d 124, 127 (1st Cir. 1991)), Domenichetti fails to establish a causal connection between her exercise of FMLA rights and the failure to promote her where she cannot establish that she expressed any interest in the position.

In contrast, the claim that her hours were reduced because of her request for leave survives Defendants' motion for summary judgment for much the same reasons that the pregnancy discrimination claim survives. It is undisputed that Palmer knew Domenichetti was pregnant from the very first week he began working at the Fall River campus. He also claims to have been informed that Domenichetti was not interested in the Director of Career Services position, a position she claims to have not wanted because of her planned maternity leave. Indeed, Defendants make no claim that Palmer was unaware of her planned leave at the time that he spoke to Anjos about Domenichetti's performance (after she had complained about his selection of Graves for the promotion). Just as a plaintiff may succeed on a discrimination claim based on the animus not of the ultimate decisionmaker, but rather on the animus of a subordinate employee who *influenced* the decisionmaker, she may similarly proceed on an FMLA retaliation

---

[4] Plaintiff's interference claim appears to be brought against Premier only, and not Palmer. See Am. Compl., Count I; Defs.' Mem. Supp. Mot. Summ. J., at 10, n.5.

claim based on the animus not of the ultimate decisionmakter (Anjos), but rather on the animus of a subordinate employee (Palmer) who influenced the decisionmaker.

Notably, once Brown advised Anjos that Domenichetti was pregnant and seeking leave, Anjos took no steps to investigate whether Palmer's complaint about Domenichetti's performance may have been related to her upcoming leave or whether Ferrise's second recommendation of a pregnant woman for a reduction in force was suspect.[5] Instead Anjos directed Brown that "given the circumstances" they should offer her the part-time position as "it protects us." On this record, a jury could infer that Anjos intended to manipulate the position to interfere with Domenichetti's substantive rights under the FMLA while minimizing exposure to a law suit.

IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment as to All Claims [#72] is ALLOWED IN PART and DENIED IN PART as follows:

As to Count I (FMLA – Interference), Count III (Pregnancy Discrimination), and Count IV (Sex Discrimination), the motion is ALLOWED as to Palmer and DENIED as to Premier;

As to Count II (FMLA – Retaliation), the motion is ALLOWED with regard to the failure to promote claim and is otherwise DENIED as to both defendants;

---

[5] In May 2012, when Anjos had directed Ferrise to go ahead and reduce the financial aid positions at the Springfield and Windsor campuses to part-time, Ferrise responded minutes later and advised Anjos that the person occupying the financial aid position at the Springfield campus whom Ferrise had recommended for termination was Sheyda Rodriguez and that she was pregnant and set to take maternity leave in a few weeks.

17

As to Count V (Title VII- Retaliation), the motion is ALLOWED.

IT IS SO ORDERED.

Date: January 5, 2015

/s/ Indira Talwani
United States District Judge